DECISION
{¶ 1} Relator, Paul Evans, commenced this original action in mandamus requesting this court to issue a writ ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability ("PTD") compensation, and to order the commission to find that he is entitled to said compensation. Pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that contrary to relator's assertion, Dr. Bond's report constituted some evidence upon which the commission could rely in denying PTD compensation. The magistrate also found that the commission did not abuse its discretion in relying upon the vocational report of Mr. Shane and that the commission provided a legally adequate explanation and analysis of the nonmedical vocational factors. Lastly, the magistrate found no abuse of discretion in connection with the commission's listing of a school crossing guard position as remunerative employment. Therefore, the magistrate has recommended that this court deny relator's request for a writ of mandamus.
 {¶ 2} No objections have been filed to the magistrate's decision.
 {¶ 3} Finding no error or other defect on the face of the magistrate's decision, pursuant to Civ. R. 53(C), we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
Brown, P.J., and McGrath, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Paul Evans, :
Relator, :
v. : No. 04AP-1148
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Shoney's Inc., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 27, 2005. Styer Styer, LLC, and Ryan D. Styer, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} Relator, Paul Evans, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that award.
Findings of Fact:
 {¶ 5} 1. Relator sustained a work-related injury on August 11, 2000, and his workers' compensation claim has been allowed for "sprain left shoulder; impingement syndrome left shoulder."
 {¶ 6} 2. On August 15, 2003, relator filed an application for PTD compensation. At the time, he was 46 years old and had completed the eighth grade. Relator also noted on his application that he could do math, but not well, and that he is unable to read or write. Relator's past work history includes jobs as a dishwasher, crossing guard, laborer, appliance delivery person, and janitor. Relator last worked on June 18, 2001.
 {¶ 7} 3. In support of his application, relator submitted medical reports from his treating physician Dr. James McQuillan. In his May 13, 2003 report, Dr. McQuillan indicated that relator had reached maximum medical improvement ("MMI") on April 1, 2003, and opined that he believed relator's claim should be amended to include "adhesive capsulitis [left] shoulder, arthritis AC joint, chronic pain [left] shoulder." Dr. McQuillan further opined that relator could not return to his former position of employment but that he could perform sedentary work provided there was no use of the left arm above table top level, and no lifting or repetitive activities of any kind with the left arm. Dr. McQuillan completed a residual functional capacities form indicating that relator could rarely bend/stoop, squat, crouch, kneel, balance, use his left hand for gross manipulation, carry up to 24 pounds, lift up to ten pounds; occasionally use his left hand for fine manipulation; continuously reach above right shoulder level, push/pull with his right arm/shoulder, use his right hand for gross manipulation, and use his right hand for fine manipulation; relator could not crawl, climb, reach above left shoulder level, push/pull with his left arm/shoulder, carry above 24 pounds, and lift above ten pounds. Dr. McQuillan also wrote a letter July 1, 2003, wherein he opined as follows:
It is my impression that Paul Evans is indeed entitled to permanent total disability. He has had persistent pain in his left shoulder for several months. Multiple attempts, both surgical and nonsurgical, have been attempted in an effort to relieve his pain and stiffness of his shoulder but these have not proven to be successful.
Mr. Evans has a very limited educational ability. Because of this, any job that he may be able to get would involve some sort of manual labor. His left shoulder pain and stiffness would make it very difficult if not impossible for him to do this type of work.
Additionally[,] the patient has had significant problems with hypertension in the past. I have never treated him for hypertension but we had quite a bit of a difficult time getting him to surgery because his blood pressure remained significantly elevated. I am not certain if blood pressure problem is something that will present the patient any difficulty.
 {¶ 8} 4. Relator was examined by Dr. Jess G. Bond, who issued a report dated January 5, 2004. With regard to his physical evaluation of relator, Dr. Bond noted as follows:
* * * Active range of motion at the left shoulder joint was as follows: flexion to 10 out of 180 degrees, extension to 30 out of 50 degrees, abduction to 30 out of 180 degrees, adduction to 10 out of 50 degrees, internal rotation to 50 out of 90 degrees, and external rotation to 50 out of 90 degrees. Muscle strength testing of the individual muscle groups comprising the left shoulder were noted to be decreased in all directions as compared to the right shoulder. The right forearm circumference measured 29 cm, and the left measured 27 cm. Deep tendon reflexes were noted to be normal in both upper extremities. Muscle strength testing (wrist flexor and extensor strength, and hand pincer grip and clenched grip strength) was noted to be normal. Sensation to sharp touch and two-point discrimination was also noted to be normal in both upper extremities.
 {¶ 9} Dr. Bond opined that relator had reached MMI, assessed an 18 percent whole person impairment, and concluded that relator could perform light-duty work.
 {¶ 10} 5. An employability assessment report was prepared by J. Michael Shane dated February 3, 2004. Based upon the report of Dr. McQuillan, Mr. Shane concluded that relator was not employable as of July 1, 2003. Based upon the report of Dr. Bond, Mr. Shane opined that relator could perform the following jobs:
School crossing guard (a previous job), odd piece checker, slot tag inserter, capping machine operator, switchbox assembler, weld inspector, electrode cleaner, rest room attendant, seal extrusion operator.
 {¶ 11} Mr. Shane noted that relator's age of 47 would not adversely affect his ability to meet the basic demands of entry-level occupations, that his eighth grade education would not affect his ability to learn and perform the types of unskilled and semi-skilled occupations he listed, that there was nothing in relator's work history to indicate he could not learn and perform the types of jobs listed, and that, while relator's stated inability to read, write, or perform basic math would adversely affect his ability to develop academic skills, it would not affect his ability to learn the types of skills necessary to learn and perform the jobs listed in this report.
 {¶ 12} 6. A vocational assessment report was prepared by Mark A. Anderson dated March 23, 2004. Mr. Anderson concluded as follows:
Given the vocational limitations listed above, and combined with the continuing complaints of pain and use of narcotic medications/TENS Unit, it is my opinion that Mr. Paul E. Evans, Sr. has no return to work potential. The medical reports and evidence indicate that Mr. Evans is incapable of performing less than the full range of sedentary activities. The claimant does not have the skills necessary to perform the occupations outlined by J. Michael Shane, M.A., C.D.M.S. The Vocational Analysis of Residual Employability confirms that Mr. Evans is not employable in any of the cited occupations, or any occupations in the local, state or national economies.
 {¶ 13} 7. Relator's application was heard before a staff hearing officer ("SHO") on March 31, 2004, and resulted in an order denying the request for compensation. The SHO relied upon the medical report of Dr. Bond and concluded that relator was physically capable of performing light-duty work. The SHO also relied upon the vocational assessment of Mr. Shane and provided her own analysis as follows:
* * * The Staff Hearing Officer also finds that the Injured Worker has the ability to learn entry-light work through on the job training. The Staff Hearing Officer notes that the Injured Worker claims that he was slow in school and that he cannot read, write, or do basic math. However, the Injured Worker has not submitted any objective evidence of his claimed intellectual deficits. The fact that the Injured Worker lacks a high school education is a major deficit but the Injured Worker was able to work without benefit of a high school education for over twenty-years.
A person is permanently and totally disabled when he is unable to perform any sustained remunerative employment. If an individual can be retrained to perform some alternative form of work albeit not his former position of employment he is not permanently and totally disabled. In this case the evidence shows that the Injured Worker retains the ability to perform at least one of his former positions of employment and he retains the ability to perform entry-level light work after some brief training. Accordingly, the Staff Hearing Officer denies the application for permanent total disability because the Injured Worker is not permanently and totally disabled.
 {¶ 14} 8. Relator filed a request for reconsideration which was denied by order of the commission mailed September 10, 2004.
 {¶ 15} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 18} Relator challenges the commission's order in three respects: (1) the medical report of Dr. Bond does not constitute "some evidence" upon which the commission could rely because Dr. Bond fails to discuss the functional limitations relator has with his left arm; (2) the commission abused its discretion by relying upon the vocational report of Mr. Shane who likewise did not take into consideration the limitations relator has with his left arm nor did he consider the side effects of prescription medicine in relation to employment as a school crossing guard; and (3) the commission's determination that relator could perform employment as a school crossing guard does not constitute sustained remunerative employment. For the reasons that follow, this magistrate finds that relator has not shown that the commission abused its discretion.
 {¶ 19} Relator argues that Dr. Bond failed to list any functional limitations that relator has with his left arm and, because of that, his report cannot constitute "some evidence" upon which the commission could rely. Relator does not cite any case law requiring a physician to list physical restrictions. Furthermore, in his report, Dr. Bond specifically set out the range of motion that relator has in his left arm as follows: "flexion to 10 out of 180 degrees, extension to 30 out of 50 degrees, abduction to 30 out of 180 degrees, adduction to 10 out of 50 degrees, internal rotation to 50 out of 90 degrees, and external rotation to 50 out of 90 degrees." Dr. Bond noted that relator has "muscular atrophy at the left shoulder, as well as limited active range of motion at the left shoulder," and noted that his limitations equate with an 18 percent whole person impairment.
 {¶ 20} As indicated above, Dr. Bond provided his objective findings which the commission could take into account in determining what jobs relator would be able to perform. As such, the magistrate finds that, contrary to relator's assertions, Dr. Bond's report does constitute "some evidence" upon which the commission could rely. Furthermore, relator's argument that Dr. Bond did not consider the side effects of the medication that he is taking cannot be substantiated. According to Dr. Bond's report, relator informed Dr. Bond that he takes "propoxyphene, Roxicet, and cyclobenzaprine for his pain." Relator argues in his brief that he also takes Darvocet, Flexeril, and Percocet. If relator failed to bring those medications to the doctor's attention, then the doctor did not err in not considering the effects of those medications. Furthermore, the record indicates that relator did not provide evidence of the medications he was taking until the day of the hearing. Relator did not submit any evidence from his physician, Dr. McQuillan, that he was taking those medications. In fact, the only evidence in the record is found in the medical reports of Drs. Paul C. Martin and Daniel N. Larusso, who both opined that, from a physical standpoint, relator could perform certain work activity with restrictions. As such, the evidence in the file, from those doctors who were told that he was taking Darvocet, Percocet, and Flexeril, was that relator could perform work in spite of those medications. As such, the magistrate finds that Dr. Bond's failure to discuss the side effects of medication does not invalidate his medical report.
 {¶ 21} Relator also challenges the commission's reliance upon the vocational report of Mr. Shane because he did not address whether or not the jobs he listed could actually be performed without the functional use of one arm. However, even relator's doctor did not say that he could not use his left arm; instead, he indicated that relator could perform sedentary work, with no use of the left arm above tabletop level and no lifting or repetitive activities of any kind with the left arm. That does not equate with no functional use of one arm. Further, as the evaluator of the vocational evidence, the commission provided its own analysis of the nonmedical disability factors and provided a legally appropriate explanation and analysis. As such, the magistrate finds that the commission did not abuse its discretion in relying upon the vocational report of Mr. Shane and further that the commission provided a legally adequate explanation and analysis of the nonmedical vocational factors. As such, the magistrate finds that the commission did not violate Noll.
 {¶ 22} Lastly, relator contends that the commission abused its discretion by finding that employment as a "school crossing guard" would constitute sustained remunerative employment even given the latitude afforded by State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360.
 {¶ 23} In Toth, the Supreme Court of Ohio considered whether or not part-time work constituted sustained remunerative employment for purposes of PTD compensation and concluded that it did. In State ex rel. DeSalvov. May Co. (1999), Franklin App. No. 98AP-986, affirmed (2000),88 Ohio St.3d 231, this court indicated that, where a claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment. Based upon these cases, certain principles emerge. First, sustained remunerative employment includes part-time work. Second, where a claimant can perform a work activity but only for a very limited amount of time (such as less than three or four hours per day), the commission may conclude that the claimant is permanently and totally disabled. However, where the claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment. In addition, the Supreme Court of Ohio has ruled that a claimant who cannot perform a full range of sedentary jobs but can nevertheless perform some sedentary jobs is therefore capable of sustained remunerative employment. State ex rel.Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414.
 {¶ 24} In the present case, relator has no restrictions on sitting, standing and walking, but has limitations with regard to the use of his left arm. The record indicates that relator is right-handed and that his arm limitations only come into play above table top level. As such, based upon the record, relator would be capable of performing work for eight hours per day.
 {¶ 25} Relator contends, however, that the specific job of "school crossing guard" is a job which would only last a couple of hours per day and, as such, that job does not constitute "some remunerative employment." However, the argument is not whether or not a specific job, in and of itself, would provide a claimant with eight hours of employment; the question is whether or not the claimant would be capable of working part-time or full time. There is no reason why relator could not work as a "school crossing guard" and also perform other work as well. Furthermore, the commission listed several other jobs which relator could perform from a physical standpoint, and the fact that the job of "school crossing guard" would only provide employment for a limited number of hours per day does not invalidate the commission's order.
 {¶ 26} Because the magistrate finds that the commission's order is supported by some evidence and meets the requirements of Noll, it would be inappropriate to grant relator's request for Gay relief.
 {¶ 27} Based on the foregoing, the magistrate finds that relator has failed to demonstrate that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.